1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT FOR THE

7                EASTERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| 9 | VILLAGER FRANCHISE SYSTEMS, INC., | ) ) | No. CV-F-04-6393 REC SMS |
| 10 | Plaintiff and Counter- | ) ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S |
| 11 | Defendant, | ) ) | MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY FOR |
| 12 | vs. | ) ) | PARTIAL SUMMARY JUDGMENT AND DIRECTING PLAINTIFF TO |
| 13 | DHAMI, DHAMI & VIRK, a general partnership, MALUK | ) ) | SUBMIT ADDITIONAL BRIEFING AND DECLARATIONS REGARDING |
| 14 | DHAMI, an individual, and KULDIP S. DHAMI, an | ) ) | ATTORNEY FEES AND INTEREST. |
| 15 | individual, | ) ) | (Doc. 21) |
| 16 | Defendants and Counter- Claimants. | ) ) | |
| 17 | | ) ) | |

18 _____

19      On December 5, 2005, the Court heard Plaintiff's Motion for

20 Summary Judgment or Alternatively For Partial Summary Judgment

21 (the "Motion").  Upon due consideration of the written and oral

22 arguments of the parties and the record herein, the Court GRANTS

23 the Motion in part and DENIES it in part as set forth herein.

24 **I.   Factual Background**

25      Defendant Dhami, Dhami & Virk ("DDV") operated a 100-room

26 guest lodging facility (the "Facility") in Turlock, California.

1  DDV is a partnership consisting of three general partners:

2  Malvinder Virk, who is not a party to this action, Defendant

3  Kuldip S. Dhami ("Kuldip Dhami" or "Kuldip"), and Defendant Maluk

4  S. Dhami ("Maluk Dhami" or "Maluk").  Maluk Dhami Dep. at 22:4-5.

5       On July 14, 2000, Plaintiff Villager Franchise Systems

6  ("Plaintiff") entered a franchise agreement (the "Franchise

7  Agreement" or the "Agreement") with DDV.  Maluk Dhami signed the

8  Agreement on behalf of DDV.  The Agreement features a blank

9  labeled "Kuldip Dhami" that contains a signature.  The parties

10  dispute whether Kuldip signed the Agreement.

11       The Agreement contained terms obligating the franchisee to

12  operate a Villager guest lodging facility for a 15-year term.

13  The Agreement required the franchisee to pay certain recurring

14  fees.  It also required the franchisee to maintain financial

15  records and make them available to Plaintiff.  The franchisee

16  also was obligated to operate the Facility according to System

17  Standards that Plaintiff had established.

18       Along with the Franchise Agreement, DDV, Maluk Dhami, and

19  Kuldip Dhami (collectively "Defendants") executed an Initial Fee

20  Note obligating them to pay $5,500 by April 2, 2001.  Defendants

21  also executed a document guaranteeing DDV's obligations under the

22  Franchise Agreement.

23       On February 14, 2001, Defendants collectively made a

24  promissory note in the amount of $40,000.  It extended Defendants

25  $40,000 in credit and required them to repay Plaintiff $1,180.96

26  per month for 36 months.

2

1    Defendants failed to pay the recurring fees due under the

2    Agreement.  They also failed to perform other duties that the

3    Agreement required.  Defendants did not repay the Initial Fee

4    Note or the Promissory Note.  Defendants claim that "certain

5    developments have caused defendants to lose possession of the

6    [P]roperty" at some point.  Opp'n at 5.

7    Plaintiff sent a Notice of Default to Defendants on October

8    9, 2002.  On December 16, Plaintiff sent Defendants a Notice of

9    Termination of the Franchise Agreement.  Some of the

10   communications that Plaintiff sent to the Facility were signed

11   for by third parties.

12   Following the termination of the Agreement, Defendants did

13   not de-identify the Facility as a Villager franchise and

14   continued to use the Villager name in conjunction with the

15   operation of the Facility.  Defendants claim that they were

16   unaware that Villager signs were displayed at the Facility.

17   Plaintiff has the exclusive right to sublicense various

18   trade names and service marks, logos, and derivations thereof

19   (collectively the "Villager Marks").  Plaintiff also has the

20   right to license the Villager System, which consists of certain

21   services for hotel patrons and services for franchisees.  Through

22   substantial effort and the expenditure of millions of dollars,

23   Plaintiff has developed goodwill in the Villager Marks.

24   Consumers throughout the United States recognize Villager Marks

25   as designating the origin of Plaintiff's lodging services.  The

26   parties do not dispute that the Villager Marks are famous in the

1 United States and that the value of Plaintiff's goodwill is

2 substantial.

3 **II.  Procedural History**

4      On October 12, 2004, Plaintiff filed this action.  Its

5 complaint features five causes of action:  Breach of Contract,

6 Breach of Promissory Note, Unjust Enrichment, Breach of Guaranty,

7 and Lanham Act Violations.  Plaintiff filed this motion (the

8 "Motion"), along with supporting declarations and exhibits and a

9 statement of undisputed material facts ("UMF"), on September 19,

10 2005.  Defendants' opposition to the motion was due October 3,

11 2005.  On October 6, 2005, Plaintiff filed a Notice of Non-

12 Receipt of Opposition to Motion for Summary Judgment.  On October

13 7, 2005, Defendants filed a response to Plaintiff's UMF.  Also on

14 October 7, 2005, the Court continued the hearing on the Motion

15 from October 17, 2005, to December 5, 2005.  On October 11, 2005,

16 Defendants filed their own "Statement of Undisputed Facts"

17 ("Defendants' UMF").  On October 12, 2005, Defendants filed a

18 memorandum of points and authorities in opposition to Plaintiff's

19 Motion.  On November 28, 2005, Plaintiff filed a reply brief and

20 evidentiary objections.

21 **III. Discussion**

22      **A.   Legal Standard**

23      Summary judgment is proper when it is shown that there

24 exists "no genuine issue as to any material fact and that the

25 moving party is entitled to judgment as a matter of law."  Fed.

26 R. Civ. P. 56.  A fact is "material" if it is relevant to an

4

element of a claim or a defense, the existence of which may affect the outcome of the suit.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)). Materiality is determined by the substantive law governing a claim or a defense.  Id.  The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party.  Id.

The initial burden in a motion for summary judgment is on the moving party.  The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  The burden then shifts to the nonmoving party to defeat summary judgment.  T.W. Elec., 809 F.2d at 630.

The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial."  T.W. Elec., 809 F.2d at 630 (citing Fed. R. Civ. P. 56(e)).  The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint."  Id. (citing First Nat'l Bank v. Cities Serv. Co.,

1  391 U.S. 253, 290, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)).

2      A plaintiff who is the moving party must set forth

3  admissible evidence on all matters as to which he or she bears

4  the burden of proof.  Zands v. Nelson, 797 F. Supp. 805, 808

5  (S.D. Cal. 1992).  The showing by a moving party that bears the

6  burden of proof "'must be sufficient for the court to hold that

7  no reasonable trier of fact could find other than for the moving

8  party.'"  Calderone v. United States, 799 F.2d 254, 258-59 (6th

9  Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under The

10  Federal Rules: Defining Genuine Issues of Material Fact, 99

11  F.R.D. 465, 487-88 (1984)).

12      **B.   Failure to Respond to Requests for Admission**

13      Plaintiff contends that Defendants' failure to respond to

14  its Requests for Admission ("RFAs") results in admission of the

15  matters requested.  "Failure to timely respond to requests for

16  admissions results in automatic admission of the matters

17  requested." FTC v. Medicor, LLC, 217 F. Supp. 2d 1048, 1053

18  (C.D. Cal. 2002); see Fed R. Civ. P. 36(a).  Unanswered RFAs are

19  automatically admitted without a motion because Federal Rule of

20  Civil Procedure 36(a) is self executing.  Medicor, 217 F. Supp 2d

21  at 1053; Fed R. Civ. P. 36(a).  Default admissions under Rule 36

22  can "serve as the factual predicate for summary judgment."

23  United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987).

24  Under Rule 36(b), matters admitted, by default or otherwise, are

25  "conclusively established."  Fed. R. Civ. P. 36(b); Kasuboski,

26  834 F.2d at 1350.  The trial court has discretion to interpret

6

the scope of the admission.   Johnson v. DeSoto County Bd. of

Comm'rs, 204 F.3d 1335, 1339-40 (11th Cir. 2000).

The defaulting party cannot attack issues of fact

established in admissions with affidavits or depositions in

opposition to a motion for summary judgment.   Kasuboski, 834 F.2d

1345 at 1350.   This rule is based on sound policy considerations.

Id.   The binding effect of Rule 36 "allows parties to narrow the

issues to be resolved at trial by effectively identifying and

eliminating those matters on which the parties agree."   Id.

Defendants' responses to Plaintiff's RFAs were due July 11,

2005.   Shadi Decl. at ¶ 2.   Plaintiff had not received any

response as of September 19, 2005.   Id.   Defendants' opposition

does not claim that they have responded to the RFAs, or dispute

that the matters requested are automatically admitted.   The Court

deems the RFAs admitted.   Therefore, the contents of the RFAs are

conclusively established.

**C.   First Cause of Action:   Breach of Contract**

Plaintiff claims it is entitled to summary judgement on its

breach of contract claim because Defendants' breached the

Franchise Agreement as a matter of law.   California contract law

entitles a franchisor to recover under a contract theory if the

franchisee breaches the franchise contract.   Postal Instant

Press, Inc. v. Sealy, 43 Cal. App. 4th 1704, 1710 (1996).

**1.   Formation**

Plaintiff contends that, on July 14, 2000, Defendants

entered the Franchise Agreement.   See Cox Decl. Ex. A.   The

7

1  Agreement obligated Defendants to operate a Villager guest
2  lodging facility for a 15-year term.  Id. at 8.

3      Defendants argue that there is a genuine issue as to whether
4  they are bound by the Agreement.  Defendants admit that Maluk
5  Dhami signed the Agreement, but deny that the other partners of
6  DDV also signed.  Opp'n at 4.  Defendants support this contention
7  by claiming that Kuldip Dhami "denies signing any of plaintiff's
8  documents."  Opp'n at 2.  Kuldip denies that the signature that
9  appears on the Guaranty above his printed name is his own.  See
10 Kuldip Dhami Dep. at 16:19-17:7.  Kuldip admitted in his
11 deposition, however, that he signed the Initial Fee Note.  Id. at
12 17:8-15; see Cox Decl. Ex. C.  Defendants do not present evidence
13 other than the self-interested deposition testimony to support
14 their claim that they did not enter the Agreement.  Moreover,
15 Defendants provide no explanation of how the absence of Kuldip's
16 signature could affect their liability under the contract.

17     In any event, these assertions are insufficient to create a
18 genuine issue as to contract formation.  Defendants concede that
19 "it is clear from the evidence that Maluk Dhami signed a
20 franchise agreement with [Plaintiff]."  Opp'n at 4.  Defendants
21 do not contend that Maluk lacked the authority to bind DDV.  In
22 fact, Defendants admit that "[o]n July 14, 2000, VFS entered into
23 a franchise (the 'Franchise Agreement') with Dhami, Dhami & Virk
24 ('DDV') for the operation of" the Facility.  Pl.'s UMF No. 8;
25 Defs.' Resp. to UMF No. 8.  These two admissions establish that
26 Maluk bound the partnership when he signed the agreement.  See

8

1  _Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes,_

2  _Ltd._, 12 Cal. App. 4th 74, 91 (1993) (partner acting with within

3  his authority may bind the partnership).

4      Defendants also claim that Al Mendoza, a representative of

5  Plaintiff, said that physical defects of the Facility would

6  prevent its acquiring franchise status.[1]  Maluk Dhami Dep. at

7  62:21-63:15.  Defendants apparently ask the Court to infer from

8  this statement that the parties did not eventually enter the

9  Franchise Agreement.  Even taken as true, this evidence does not

10 create an issue as to whether the Agreement was eventually

11 formed.  Plaintiff's alleged preference that Defendants first

12 improve the Facility does not indicate that the parties did not

13 ultimately form a contract when they signed the Agreement.

14 Defendants have not created a genuine issue as to whether the

15 parties formed a franchise contract.

16     Defendants argue against the existence of a contract by

17 claiming that "[t]he franchise agreement was never implemented or

18 performed between the contracting parties."  Defs.' Resp. to UMF

19 No. 17.  Defendants do not point to any of Plaintiff's

20 obligations under the Franchise Agreement that it did not

21 perform.  In fact, Defendants concede that Plaintiff "proceeded

22 to fulfill some of its obligations under the contract with third

23 parties who were not authorized and not known to defendants."

24 _____

25     [1]Plaintiff objects that this testimony is excludable on a
   hearsay ground.  Because this evidence does not create a genuine
   issue as to a material fact, the Court need not decide its
26 admissibility.

9

1  Opp'n at 2.  Defendants' conclusory claim that Plaintiff failed

2  to perform under the contract does not create an issue as to

3  whether the parties formed a contract.

4                2.   **Defendants' Breach**

5       Section 11.2 of the Franchise Agreement allows Plaintiff to

6  terminate the Agreement for a variety of reasons, including

7  Defendants' failure to cure a default for nonpayment or other

8  breach the Agreement, loss of possession of the Facility, or

9  receipt of two or more notices of default in a one year period,

10 regardless of whether the defaults were cured.  Cox Decl. Ex. A

11 at 12.  Upon termination, Plaintiff is entitled to seek

12 liquidated damages pursuant to section 12.1 of the Agreement.

13 Id. at 12-13.

14      Pursuant to the Agreement, Defendants undertook a variety of

15 obligations.  Plaintiff claims that Defendants breached the

16 Agreement in several respects.  The Agreement required Defendants

17 to pay certain recurring fees.[2]  Id. at 9, 37.  Plaintiff claims,

18 and Defendants admit, that Defendants failed to pay certain of

19 the recurring fees that it owed under the Agreement.  RFA to DDV,

20 Maluk Dhami, and Kuldip Dhami (collectively "RFA to Defs.")[3] No.

21 2; Cox Decl. Ex. H.  Plaintiff argues that Defendants failed to

22

23      [2]The recurring fees, detailed in section 7 and Schedule C of
   the Agreement, included royalties, service assessments, taxes,
24 interest, reservation system user fees, annual conference fees, and
   other fees.  See Cox Decl. Ex. A at 9, 37.
25      [3]The requests for admissions sent to these three entities
   appear to be identical.  See Shadi Decl. Ex. A.  None of the
26 parties responded to the requests.  Shadi Decl. at ¶ 2.

                                10

maintain financial records as required under Section 3.8.1 of the Agreement. Id. at 4. Plaintiff also claims that Defendants breached the Agreement by failing to operate the Facility according to Plaintiff's System Standards, failing to modify the Facility as required, failing to report the Facility's revenues to Plaintiff, failing to provide Plaintiff proof of insurance coverage, and transferring ownership of the Facility without notifying Plaintiff.

Defendants claim that they did not breach the Agreement because they lost possession of the Facility. They allege that Plaintiff has not shown that "defendants did perform[] under the contract and caused those defaults." Opp'n at 5. Defendants contend that they are not responsible for "breach and default of third parties" unless Plaintiff can show that Defendants authorized or "aided and abett[ed]" the third party actions. Id. Defendants claim in support that mail sent to Defendants was signed for by third parties. Defendants also claim that Plaintiff "was dealing with Gary Baron" because he was "listed as partner" on a Quality Assurance and Trademark Evaluation Report. Opp'n at 5; Opp'n Ex. 10. The report lists "GARY BARON" with a title of "PARTNER" as the individual who should sign the report to acknowledge its receipt. Opp'n Ex. 10.

Defendants do not indicate a sound legal basis on which Plaintiff's reference that incorrectly attributes partnership to a third party creates an issue as to whether Defendants breached the Agreement. Defendants claim that Plaintiff's dealings with

third parties indicate that it "made a unilateral mistake as to
the parties they were dealing with during the performance stage
of the agreement."  Opp'n at 5.  Defendants then cite <u>Morta v.</u>
<u>Korea Ins. Corp.</u>, 840 F.2d 1452 (9th Cir. 1988), for the
proposition that a party may not benefit from its unilateral
mistake.  In <u>Morta</u>, the court enforced a contract against a party
who failed to read an important part of the document before
signing it.  <u>Id.</u> at 1457-58.  This holding does not support
Defendants' claim that their liability is ameliorated by
Plaintiff's contact with third parties.

The Agreement seems to explicitly preclude arguments like
Defendants' that a third party assumed responsibility for the
franchise obligations after the transfer of the Facility.
Section 9.5 of the Agreement states that, following unauthorized
transfer of the Facility, "[y]ou will continue to be liable for
payment and performance of your obligations under this Agreement
until we terminate this Agreement, all your financial obligations
to us are paid and all System identification is removed from the
Facility."  Cox Decl. Ex. A at 11.  By the terms of the
Agreement, Defendants' liability transcends their possession of
the Facility.

Defendants have not contended, on a novation theory for
instance, that Plaintiff intended to relieve Defendants of
liability under the contract and to look only to a third party
for performance.  See <u>Paykar Constr., Inc. v. Spilat Construction</u>
<u>Corp.</u>, 92 Cal. App. 4th 488, 494 (2001) (no novation where

12

parties lacked an intent to extinguish previous obligation).  A reasonable factfinder could not imply an intent to release the Defendants of liability because of a passing reference to a third party in a Quality Assurance report.  To the extent Plaintiff can establish that Defendants had obligations under the Franchise Agreement, the failure to meet those obligations establishes that the Defendants, not someone else, are responsible for the breach.

Defendants' alleged nonreceipt of communications from Plaintiff also does not mitigate their liability on a contract theory.  For the reasons above, this argument does not create a genuine issue by implying that someone other than Defendants is responsible for meeting Defendants' contract obligations.[4]

In any event, Defendants' breaches of the Franchise Agreement are "conclusively established" by their failure to respond to the RFAs.  Fed. R. Civ. P. 36(b).  One of the RFAs that Plaintiff propounded states, "Admit that YOU have failed to

---

[4]Nor does evidence that Defendants did not receive the communications create an issue as to whether Plaintiff properly terminated the contract.  Defendants do not enunciate such an argument.  In any event, sections 11.1 and 11.2 of the Franchise Agreement allow Plaintiff to inform Defendants of default and to terminate the franchise relationship by "written notice."  Cox Decl. Ex. A at 12.  Plaintiff points out that, the Agreement, section 17.3, provides, "Notices will be effective if in writing and delivered . . . to the appropriate party at its address stated below or as may be otherwise designated by notice."  Id. at 18.  Section 17.3 lists the address of the Facility for delivery of notices.  Id.  Plaintiff attaches Notices of Default it claims it sent to the Facility on December 28, 2001, April 5, 2002, July 25, 2002, and October 9, 2002. See Cox Decl. ¶¶ 17-20, Ex. E, F, G, H.  Defendants do not contend that Plaintiff failed to deliver the notices to the designated address.  Defendants admitted that they received a default notice, a termination notice, and cease and desist letters from Plaintiff.  RFAs to Defs. Nos. 1, 3, 4, 5.

1  make any payment or perform or cause Dhami, Dhami & Virk to

2  perform each obligation required under the Franchise Agreement."

3  RFA to Defs. No 11.  Defendants' failure to answer this request

4  operates to conclusively establish that they breached "each

5  obligation" that the Agreement requires of them.  While this may

6  seem to be a harsh result, the important policy interests in

7  using RFAs to expedite litigation and narrow the issues in

8  dispute justifies this treatment of failure to respond.  See

9  Kasuboski, 834 F.2d at 1350 (upholding grant of summary judgment

10 for plaintiff based on defendants' default admissions for failure

11 to respond to RFAs, despite defendants' attempt to refute

12 admissions with other evidence).  No genuine issue exists as to

13 whether Defendants breached the Franchise Agreement.

14      Accordingly, Plaintiff's motion for summary judgment on this

15 cause of action is GRANTED.

16      **D.   Second Cause of Action:  Breach of Notes**

17      Plaintiff seeks to recover amounts due under the Initial Fee

18 Note and the Promissory Note.  Plaintiff claims the Initial Fee

19 Note obligated Defendants to pay $5,500 by April 2, 2001.  See

20 Cox Decl. Ex. C.  The Initial Fee Note bears simple interest at a

21 rate equal to the lesser of 18 percent per annum or the highest

22 rate allowed by law.  Id.  Defendants did not dispute Plaintiff's

23 UMF that stated, "In connection with entering into the Franchise

24 Agreement, the Defendants also co-made an Initial Fee Note in the

25 amount of $5,500 (the 'Note')."  Pl.'s UMF No. 10; Defs.' Resp.

26 to UMF No. 10.  Despite Defendants' denials that Kuldip Dhami

14

1  signed any of the Franchise documents, he has admitted that he

2  signed the Initial Fee Note.  Id. at 17:8-15; see Cox Decl. Ex.

3  C.  Defendants admit that they did not pay the amount due under

4  the Initial Fee Note prior to its due date.  RFA to Defs. No. 6.

5  Defendants do not contend that they have ever made such a

6  payment.  Accordingly, Plaintiff is entitled to recover the

7  amount due under the Initial Fee Note as a matter of law.

8      Under the terms of the Promissory Note, Plaintiff extended

9  Defendants a $40,000 line of credit.  See Cox Decl. Ex. D.  The

10  Promissory Note purportedly requires Defendants to repay

11  Plaintiff $1,180.96 per month for 36 months.  Id. at 1.

12  Defendants admit that they "co-made a promissory note in the

13  amount of $40,000 (the 'Promissory Note')."  Pl.'s UMF No. 11;

14  Defs.' Resp. to UMF No. 11.  Defendants failed to make the

15  monthly payments required under the Promissory Note.  RFA to

16  Defs. No. 7.  Defendants do not contend that they have made any

17  payments on the Promissory Note.

18      Defendants claim that Plaintiff has failed to present

19  evidence that DDV and the other Defendants executed these

20  agreements.  Defendants concede that Maluk Dhami signed the

21  promissory note.  Opp'n at 2.  Defendants do not contend that

22  Maluk lacked the authority to bind the DDV partnership to the

23  terms of the promissory note.  Rather, its admission that

24  Defendants "co-made" the promissory note establishes that Maluk's

25  signature bound DDV.  Pl.'s UMF No. 11.  Defendants further

26  assert that Plaintiff must show that Defendants, not someone

15

else, actually made, consented to, or authorized purchases with

the credit Plaintiff extended them.  Defendants do not cite any

provision of the Agreement that predicates liability under the

contract on the manner in which the payments were spent.

Defendants do not deny that Plaintiff extended them the credit.

There exists no genuine issue as to whether Defendants are liable

under the Promissory Note.

Accordingly, summary judgment for Plaintiff on this cause of
action is GRANTED.

**E.   Third Cause of Action:   Unjust Enrichment**

California law recognizes a cause of action for unjust
enrichment:

> Under the law of restitution, an individual
> may be required to make restitution if he is
> unjustly enriched at the expense of another.
> A person is enriched if he receives a benefit
> at another's expense.  The term "benefit"
> "denotes any form of advantage."  . . .  Even
> when a person has received a benefit from
> another, he is required to make restitution
> "only if the circumstances of its receipt or
> retention are such that, as between the two
> persons, it is unjust for him to retain it."

Ghirardo v. Antonioli, 14 Cal. 4th 39, 51 (1996) (internal

citations omitted).  Plaintiff claims that Defendants were

unjustly enriched because they failed to pay the recurring fees

required to remain a franchise.  Nevertheless, Plaintiff argues,

during the term of the Franchise Agreement they used the Villager

Marks and name and the franchise services Plaintiff provides.

Following termination of the Agreement, Defendants were further

enriched by continued use of the Villager Marks.

16

1   "However, as a matter of law, a quasi-contract action for

2   unjust enrichment does not lie where, as here, express binding

3   agreements exist and define the parties' rights." <u>Cal. Med.</u>

4   <u>Ass'n v. Aetna U.S. Healthcare of Cal.</u>, 94 Cal. App. 4th 151, 172

5   (2001).  Where the parties have entered a contract that covers a

6   subject, the Court cannot substitute its own notions of fairness

7   for the terms that the contract establishes.  <u>Id.</u> (citing <u>Hedging</u>

8   <u>Concepts, Inc. v. First Alliance Mortgage Co.</u>, 41 Cal. App. 4th

9   1410, 1420 (1996)).

10      The Court has held that Plaintiff and Defendants formed a

11  contract consisting of the terms of the Franchise Agreement.  The

12  Agreement called for Defendants to pay the recurring fees and set

13  forth the remedies for default.  The Agreement also contains

14  terms that governed Defendants' use of the Villager Marks.

15  Plaintiff is not entitled to an equitable remedy for any unjust

16  enrichment of Defendants where a contractual remedy is available.

17      Accordingly, summary judgment on this cause of action is

18  DENIED.

19      **F.    Fourth Cause of Action:  Breach of Guaranty**

20      Plaintiff seeks to recover for the breaches of the Franchise

21  Agreement through enforcement of a Guaranty signed by Maluk and

22  Kuldip Dhami.  Cox Decl. Ex. B.  The Guaranty purports to bind

23  the guarantors to "guaranty that [Defendants'] obligations under

24  the agreement, including any amendments, will be punctually paid

25  and performed."  <u>Id.</u>  The Guaranty requires the guarantors to

26  "immediately make each payment and perform or cause the Franchise

17

1  to perform, each unpaid or unperformed obligation of Franchisee

2  under the Agreement."  Id.

3      Each of the Defendants failed to answer an RFA stating,

4  "Admit that YOU provided [Plaintiff] with a Guaranty of Dhami,

5  Dhami & Virk's obligations under the Franchise Agreement, a copy

6  of which is attached to the COMPLAINT as Exhibit 'B.'" RFA to

7  Defs. No. 10.  Defendants argue that Kuldip Dhami denies signing

8  this document, creating a triable issue as to its enforceability.

9  This denial cannot rebut Defendants' admission, which is now

10  "conclusively established," that it provided a Guaranty of DDV's

11  obligations.  See Kasuboski, 834 F.2d at 1350.  Defendants also

12  admit that they have breached "each obligation" required under

13  the Franchise Agreement.  RFA to Defs. No 11.

14      Accordingly, summary judgment for Plaintiff on this cause of

15  action is GRANTED.

16     **G.   Fifth Cause of Action:  Lanham Act Violations**

17      Plaintiff seeks to recover under Lanham Act Sections 32[5] and

18

---

19     [5]Lanham Act Section 32, or 15 U.S.C. section 1114(1),

20  provides, in pertinent part:

21        Any person who shall, without the consent of
        the registrant--

22          (a) use in commerce any reproduction,
        counterfeit, copy, or colorable imitation of a

23        registered mark in connection with the sale,
        offering   for   sale,   distribution,   or

24        advertising of any goods or services on or in
        connection with which such use is likely to

25        cause confusion, or to cause mistake, or to
        deceive . . . shall be liable in a civil

26        action by the registrant . . . .

18

1  43[6] on the basis that Defendants used the Villager Marks at the

2  Facility without Plaintiff's authorization.  To defeat summary

3  judgment on a claim under Sections 32 and 43, Defendants "must

4  raise a genuine issue of fact as to (1) whether their use of the

5  [Villager Marks] was without the registered owner's consent, or

6  (2) whether their unauthorized use was likely to cause confusion

7  in the marketplace as to the origin or sponsorship of the

8  product."  U.S. Structures, Inc. v. J.P. Structures, Inc., 130

9  F.3d 1185, 1188-89 (6th Cir. 1997).

10      Defendants admit that, after termination of the Franchise

11  Agreement, they failed to "de-identify" the Facility as a

12  Villager franchise and "used the Villager name in connection with

13  the operation of" the Facility.  RFA to Defs. Nos. 8, 9.

14

---

15      [6]Section 43, or 15 U.S.C. § 1125(a)(1), provides:

16          Any person who, on or in connection with any
   goods or services, or any container for goods,

17          uses in commerce any word, term, name, symbol,
   or device, or any combination thereof, or any

18          false   designation   of   origin,   false   or
   misleading description of fact, or false or

19          misleading representation of fact, which — (A)
   is likely to cause confusion, or to cause

20          mistake, or to deceive as to the affiliation,
   connection, or association of such person with

21          another   person,   or   as   to   the   origin,
   sponsorship, or approval of his or her goods,

22          services, or commercial activities by another
   person, or (B) in commercial advertising or

23          promotion,   misrepresents   the   nature,
   characteristics,  qualities,  or  geographic

24          origin  of  his  or  her  or  another  person's
   goods, services, or commercial activities,

25          shall  be  liable  in  a  civil  action  by  any
   person who believes that he or she is or is

26          likely to be damaged by such act.

Defendants do not attempt to controvert Plaintiff's claim that
its consent to use the Villager Marks ended when Plaintiff
terminated the Agreement.  <u>See</u> Cox Decl. at ¶ 39.  Nor do
Defendants attempt to raise an issue as to whether use of the
Villager Marks were likely to confuse consumers.

Defendants' only argument in opposition to summary judgment
on this issue is that Plaintiff has failed to show Defendants'
"actual knowledge, intent or reckless disregard that plaintiff's
rights are being infringed upon."  Opp'n at 6.  Defendants point
to Kuldip and Maluk Dhami's testimony in their depositions that
they were not aware that the Villager Marks were displayed on the
Facility.  <u>See</u> Kuldip Dhami Dep. at 21:1-20; Maluk Dhami Dep. at
80:9-19.  Defendants claim that they are entitled to an "innocent
infringer" defense, citing in support <u>World Wrestling Fed'n Inc.
v. Posters, Inc.</u>, 58 U.S.P.Q. 2d (BNA) 1783, 2000 U.S. Dist.
LEXIS 20357 (N.D. Ill. Sept. 25, 2000).

The defendant in <u>World Wrestling</u> had allegedly printed
certain trademarked materials at the request of a third party.
<u>Id.</u> at *11-12.  The <u>World Wrestling</u> defendant faced liability
under Lanham Act Section 32(1)(b).  <u>Id.</u> at *4.  Section 32(1)(b)
establishes liability for "[a]ny person who shall . . .
reproduce, counterfeit, copy, or colorably imitate a registered
mark . . . intended to be used in commerce . . . ."  15 U.S.C.
§ 1114(b).  A defendant alleged to have violated that section may
limit relief to an injunction against future printing by
establishing that "he or she is an innocent infringer or innocent

20

1  violator."  15 U.S.C. § 1114(2)(A); <u>World Wrestling</u>, 2000 U.S.

2  Dist. LEXIS 20357, at *4-5.

3       Here, Plaintiff claims that Defendants violated Section

4  32(1)(a) by virtue of its firsthand "use in commerce" of the

5  Villager Marks, not merely for a reproduction of a mark "intended

6  to be used in commerce."  <u>See</u> 15 U.S.C. § 1114(1)(a),(b).

7  Section 32(1)(a) does not provide for an innocent infringer

8  defense as subsection (b) does.  See 15 U.S.C. § 1114(1) ("Under

9  ***subsection (b)*** hereof, the registrant shall not be entitled to

10 recover profits or damages unless the acts have been committed

11 with knowledge that such imitation is intended to be used to

12 cause confusion, or to cause mistake, or to deceive." (emphasis

13 added)).  Plaintiff need not show Defendants' "knowledge, intent,

14 or reckless disregard" of Plaintiff's rights to establish

15 liability under 32(1)(a).  Defendants' claims that they were

16 unaware of the display of the Villager Marks at the Facility,

17 even if true, do not present a basis for mitigating their

18 liability.  The Court finds that there is no genuine issue as to

19 Defendants' Lanham Act violations.

20      Accordingly, Plaintiff's motion for summary judgment on this

21 cause of action is GRANTED.

22      **H.   Defendants' Counterclaim**

23      Defendants' counterclaim alleges that Plaintiff is liable

24 for breach of contract because it "failed to comply with any of

25 the operating and service obligations contained in the franchise

26 agreement more specifically the provisions of 4.1 thru 4.7."

21

Answer at 2.  In its opposition, Defendants devote one sentence

to support of their counterclaim: "Defendants paid $11,000 to

plaintiff VFS (See Maluk Dhami's deposition, Exhibit 6) and the

defendants did not get anything for it an[d] therefore are

entitled to get their money back as a matter of law."  Opp'n at

6.  Maluk Dhami claimed in his deposition that he understood that

Plaintiff would provide a computer system and training in

exchange for Defendants' $11,000 payment.[7]  Dep. Kuldip Dhami at

41:19-24.  Maluk Dhami's deposition testimony indicates that they

did not receive the franchise nor the computer system.[8]  Id. at

67:12-13.  Defendants do not claim that Plaintiff did not meet

its obligation provide training or omit any other obligation

under section 4 of the agreement.  See Cox Decl. Ex. A at 6-8.

---

[7]The testimony, in relevant part, was as follows:

> Q.  Okay.  And do you recall what the purpose
> was for the payment of $11,000?  Did you
> understand that to be your —
>
> A.  Yeah, they are going to sell me computer
> system for that thing, training and computer
> system, bring in for that.

Dep. Kuldip Dhami at 41:19-24.

[8]The testimony, in relevant part, was as follows:

> Q.  Do you recall ever submitting any reports
> to Villager Inn that reflected the amount of
> revenue that was generated during a particular
> month from the rental of rooms?
>
> A.  No, we never got franchise.  We never got
> franchise.  We never got computer system.

Dep. Kuldip Dhami at 67:8-13.

1      Defendants' showing is inadequate to support a cause of

2  action for breach of contract.  Defendants do not present any

3  evidence to support, and do not even allege, that Plaintiff

4  promised to supply them a computer system.  Defendants' mere

5  belief that the $11,000 entitled them to receive a computer

6  system does not suffice to support a breach of contract cause of

7  action.  Defendants do not claim that any provision of the

8  Franchise Agreement, any provision of any other document, or any

9  representation by Plaintiff or its agents obligated Plaintiff to

10  provide a computer system.

11      Nor does Defendants' conclusory claim that they did not

12  receive the franchise create a genuine issue as to whether

13  Plaintiff performed under the terms of the Franchise Agreement.

14  Defendants do not point to any provision of the Agreement that

15  Plaintiff breached.  Defendants' broad claim that Plaintiff

16  failed to perform does not meet its burden to produce

17  "significant probative evidence tending to support the

18  complaint."  See T.W. Elec., 809 F.2d at 630.  The Court is not

19  obligated to search the record for an affidavit or other document

20  that supports Defendants' vague counterclaim.  See Carmen v. San

21  Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir.

22  2001).  No genuine issue exists as to whether Plaintiff breached

23  the Franchise Agreement or any contract with Defendants.

24      Accordingly, summary judgment for Plaintiff on Defendants'

25  counterclaim is GRANTED.

26

23

1   ***I.    Damages***

2      On the First Cause of Action for breach of contract,

3   Plaintiff provides an affidavit stating that the contract

4   entitles it to recurring fees in the amount of $45,862.73 (Cox

5   Decl. at ¶ 26). Defendants do not dispute the amounts of

6   recurring fees.  As the record contains no factual controversy

7   regarding the amount of recurring fees, the Court finds that

8   Plaintiff is entitled to recover $45,862.73 in recurring fees

9   under the Agreement.  <u>Garcy Corp. v. Home Ins. Co.</u>, 496 F.2d 479,

10  484 (7th Cir. 1974) (uncontroverted affidavits are sufficient to

11  establish damages on plaintiff's motion for summary judgment).

12     The Sections 12 and 19.3 of the Agreement provide for

13  liquidated damages in the amount of $100,000.  Cox Decl. Ex. A at

14  13-14, 20; Cox Decl. at ¶¶ 27-34.  Defendants do not dispute this

15  amount or the appropriateness of liquidated damages.  A

16  liquidated damages clause will be considered "unreasonable," and

17  hence unenforceable under California Civil Code section 1671(b),

18  "if it bears no reasonable relationship to the range of actual

19  damages that the parties could have anticipated would flow from a

20  breach."  <u>Ridgley v. Topa Thrift & Loan Ass'n</u>, 17 Cal. 4th 970,

21  977 (1998).  The parties expressly acknowledged that the

22  liquidated damages provision "is a reasonable pre-estimate of the

23  damages that will be incurred and is not a penalty."  Cox Decl.

24  Ex. A at 25.  Furthermore, an uncontroverted affidavit

25  establishes that the amount of liquidated damages in the

26  Agreement is based on how long Plaintiff typically takes to

24

replace a terminated hotel property.  Cox Decl. at ¶ 29.  The
Court finds that Plaintiffs are entitled to recover $100,000 in
liquidated damages under the contract.

The breach of notes cause of action entitles Plaintiffs to
recover $40,000 for the promissory note and $5,500 for the
initial fee note.   RFA to Defs. Nos. 6, 7; Cox Decl. Ex. D at 1.
The Court finds Plaintiff is entitled to recover $45,500 on the
breach of notes cause of action.

Plaintiff has also requested attorney fees and interest in
connection with its claims for recovery under the Agreement and
the Notes.  See Cox Decl. Ex. A at 18 ("The non-prevailing party
will pay all costs and expenses, including reasonable attorneys'
fees, incurred by the prevailing party to enforce this Agreement
or collect amounts owed under this agreement."); Cox Decl. Ex. C
at 2 ("If this Note is collected by or through an attorney at
law, the Holder shall be entitled to collect reasonable
attorney's fees and all costs of collection."); Cox Decl. Ex. D
at 2.   Defendants have not disputed that they are liable for
attorney fees incurred collecting on under the Agreement and the
Notes and for interest that has accrued under these debts.  As a
matter of law, Plaintiff is entitled to attorney fees and
interest pursuant to the terms of these instruments.

Plaintiff claims that it is entitled to recover $27,767.13
under the Lanham Act.  Cox Decl. at ¶ 41.  This figure represents
the average monthly Recurring Fee payment during the franchise
relationship times the number of months of infringement.  Id.

25

Defendants do not dispute the length of the infringement or the manner of calculating damages.  Franchise fees normally received for use of a mark are a proper measure of damages under the Lanham Act.  Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1986).  Awarding Lanham Act damages and liquidated damages where a hotel franchisee breaches a franchise agreement does not amount to impermissible "double recovery." Id. at 1566.  This is because each set of damages attaches to a different violation:  "Liquidated damages were awarded because the partners breached the franchise agreement; trademark infringement damages were awarded because they held over . . . after the agreement was terminated." Id.  The Court finds that Plaintiff is entitled to $27,767.13 in damages under the Lanham Act.

Plaintiff claims Defendants' infringement was willful, entitling them to treble damages.  See 15 U.S.C. § 1117(b); Nintendo of Am. v. Dragon Pac. Int'l, 40 F.3d 1007, 1010 (9th Cir. 1994) (court shall treble the damages for a finding that defendant was "intentionally using a mark or designation").  Plaintiffs also request attorney's fees for the Lanham Act violation.  Attorney fees are available where infringer's conduct is "malicious, fraudulent, deliberate or willful." Nintendo, 40 F.3d at 1010.  Defendants claim that they were unaware that Plaintiff's trademark rights had been infringed.  A genuine issue exists as whether Defendants willfully infringed, triggering treble damages or attorney fees for the Lanham Act violation.

26

1    Defendants' liability for attorney fees and interest under

2 the Agreement and Notes are undetermined and an issue exists as

3 to whether treble damages or attorney fees are appropriate for

4 the Lanham Act Violation.  Consequently, the Court defers final

5 determination of the total amount of damages, attorney fees, and

6 interest in which judgment for Plaintiff should be entered.

7

8    **ACCORDINGLY:**

9  1.   Plaintiff's motion for partial summary judgment is GRANTED

10        with respect to its First, Second, and Fourth Causes of

11        Action and Defendants' Counterclaim.

12 2.   Plaintiff's motion for partial summary judgment is GRANTED

13        with respect to its Fifth Cause of Action, except for

14        Plaintiff's claim for treble damages and attorney fees.

15 3.   Plaintiff's motion is DENIED with respect to its Third Cause

16        of Action and with respect to its claim for treble damages

17        and attorney fees under its Fifth Cause of Action.

18 4.   Within 30 days of the filing date of this order, Plaintiff

19        shall file further briefing and declarations regarding the

20        amounts of attorney fees and interest due under the

21        Agreement and the Promissory and Initial Fee Notes.

22        Defendants shall file any response to Plaintiff's further

23        briefing on the issue of attorney fees and interest within

24        15 days thereafter.

25 ///

26 ///

27

1

2    IT IS SO ORDERED.

3    **Dated:  January 26, 2006**              **/s/ Robert E. Coyle**
     810ha4                              UNITED STATES DISTRICT JUDGE
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26